AYERS, WEATHERWAX & REID CO. V. SUNDBACK, Sheriff.

1.  The county courts of this state are courts of limited and special jurisdiction.

2.  As to courts of limited or special jurisdiction it is only after jurisdiction is affirmatively shown that the presumption of the validity and regularity of their proceedings attaches.

3.  Does the voluntary appearance of a defendant in such court do away with the necessity for a summons as a part of the judgment roll, so that such judgment roll in which no summons appears or is accounted for, is sufficient to prove the judgment, as against the rights of a stranger to it?   Quaera.

4.  A mortgage upon a stock of goods, which recites that it is the intention of the parties that the mortgagor shall, by additions, keep the stock up to its then value, is not on that account presumptively fraudulent on its face.

5.  Where, under such a mortgage intended to cover additions, possession is taken by the mortgagee of the entire stock, including such additions, his right thereto is paramount to that of a creditor, whose judgment and execution were subsequent to such change of possession.

6.  The mortgage not being presumptively void; the mortgagee having taken possession under it; it not being shown that the sheriff had or was chargeable with notice of facts which would tend to make the mortgage fraudulent in fact, and not being directed or requested to levy upon such stock or any part of it,—it was error to charge the jury, as matter of law, that the sheriff was liable for neglect to levy an execution then in his hands for collection upon such stock, even though, upon the trial of such action against the sheriff for failure to collect such execution, such extrinsic facts were shown as would make the mortgage fraudulent as against creditors.

(Syllabus by the Court.   Opinion filed February 21, 1894.)

Appeal from circuit court, Minnehaha county.   Hon. FRANK R. AIKENS, Judge.

Action to recover against the defendant for alleged neglect of duty as sheriff.   Plaintiff had judgment, and defendant appeals.   Reversed.

The facts so far as material are stated in the opinion.

*Joe Kirby*, for appellant.

In actions such as this the plaintiff must prove a valid judgment. It is not sufficient that he show an execution to be issued. McDonald v. Bunn, 3 Dak. 45.

A chattel mortgage upon a stock of goods which covers any addition that might be made to the stock to keep the same up to its value is not presumably fraudulent on its face. McKay v. Shotwell, 6 Dak. 124; Lane v. Starr, 45 N. W. 212. It was therefore error for the court to direct a verdict for the plaintiff, the evidence showing that all the property the judgment debtor had at the time the execution was offered to the sheriff was encumbered by a chattel mortgage to its full value, which the execution debtor did not pay, nor deposit the amount due with the county treasurer.

*J. W. Jones*, for respondent.

Jurisdiction of the person of a defendant may be obtained by his voluntary appearance and answer as fully as though he had been served with summons. Brown v. Nichols, 42 N. Y. 26; McCormack v. Railroad Co., 49 N. Y. 303; Attorney General v. Ins. Co., 77 N. Y.

Even if it were considered that the provisions of the code relating to confessions of judgment applied to the judgment in question, and that certain of those provisions had not been observed, it was still a valid judgment as between the parties, and hence the execution lawfully issued and it was the duty of the sheriff to enforce it. Lee v. Figg, 37 Cal. 320; Read v. French, 28 F. Y. 285; Mileer v. Earl, 24 N. Y. 110; Wells v. Geiseke, 27 Minn. 478; Coolbaugh v. Roemer, 30 Minn. 424; Reily v. Johnson, 22 Wis. 279; Burchett v. Cassady, 18 Ia. 242.

The mortgage having been kept off record by agreement of the parties in order to enable the mortgagor to continue in business and buy goods on credit, was fraudulent against the plaintiffs who became creditors while the mortgage was being concealed. Standard Paper Co. v. Gunther, 67 Wis. 101; Thompson v. VanVechten, 27 N. Y. 568; Feary v. Cummings,

41 Mich. 383; Crippen v. Fletcher, 56 Mich. 386. The mortgage was further fraudulent for the reason that it appears from the agreement and understanding of the parties at the time, and from their conduct, that the mortgagor was to remain in possession of the stock and sell it at retail for his own use and benefit. Potts v. Hart, 99 N. Y. 168; Robinson v. Elliott, 22 Wall. 513; Greeley v. Winsor, (S. D.) 45 N. W. 325, 48 N. W. 214.

KELLAM, J. The respondent, as plaintiff, brought this action against appellant, as sheriff of Minnehaha county, on account of his neglect to collect a judgment upon which execution was issued and delivered to him. The complaint alleged that plaintiff recovered judgment against one A. S. Kilroy in the county court of Minnehaha county, caused execution to be issued thereon, and delivered for collection to defendant, as sheriff; that Kilroy had and owned personal property subject to execution in said county, sufficient to satisfy the execution, to the knowledge of defendant, yet he refused to levy upon the same, or in any manner collect said execution, but returned the same unsatisfied. The answer denied the allegations of the complaint, except as to defendant's official character, and pleaded affirmatively, in defense, that, if said Kilroy had or owned any property in said county, the same was subject to and covered by mortgage for its full value, made by him as mortgagor, and duly of record, and that plaintiff did not pay or tender to the mortgagee the amount of said mortgage debt, or deposit the same with the county treasurer for the mortgagee. At the close of the evidence the court directed the jury to return a verdict for the plaintiff. Upon such verdict, judgment was rendered, and the defendant appeals.

The theory of the plaintiff below and of the trial court seems to have been that the sheriff was liable because he did not seize property of Kilroy covered by a chattel mortgage which, upon the trial, the court evidently regarded fraudulent

VOL. 5, S. D.—3

as against creditors. The judgment upon which the execution mentioned in the complaint was issued was a judgment of the county court of Minnehaha county. Such court is a court of limited and special jurisdiction, in this state. Nelson v. Ladd, (S. D.) 54 N. W. 809. Section 4926, Comp. Laws, provides that "in pleading a judgment * * * of a court * * * of special jurisdiction, it shall not be necessary to state the facts conferring jurisdiction, but such judgment * * * may be stated to have been duly given and made. If such allegations be controverted the party pleading shall be bound to establish on the trial the facts conferring jurisdiction." In the complaint the judgment was pleaded according to the terms of this section. The answer denied the allegation, so the plaintiff on the trial was bound to show the jurisdiction of the county court to render the judgment. The evidence offered consisted of papers purporting to be the "files in the suit," which were "the complaint, answer, judgment and stipulation;" and these papers, it is alleged in the abstract and admitted, "constitute the whole of the files in said action." It may be suggested, in explanation, that the stipulation referred to is a stipulation by defendant that judgment may be entered against him for the amount claimed in the complaint. This evidence was objected to on the ground, among others, that it was insufficient to show the jurisdiction of the county court. It will be noticed that there was no summons in the case. At least none was shown. And, if essential, none will be presumed, in aid of the jurisdiction of the county court. As to courts of limited or special jurisdiction, it is only after jurisdiction is affirmatively shown that the presumption of the validity and regularity of their proceedings attaches. Black, Judgm. § 282. Cooper v. Sunderland, 3 Iowa 114; Wilkinson v. Moore, 79 Ind. 397; Henry v. Estes, 127 Mass. 474. The question, then, is, not whether the judgment without a summons was effectual and valid as against Kilroy, who consented to it, but were the papers offered sufficient to prove a judgment as against a stranger to them? for we take it

that if the judgment, as proved, would not be good as against Gould, the mortgagee, it would not be a good foundation for this action against the sheriff for not levying upon the goods covered by his mortgage. Kilroy might not have been in position to question a judgment to which he had expressly consented, but in this action Sundback, the sheriff, stands in a different relation to it. As to him, it was not a judgment, and his rights could not be affected by it, as such, until it was proved as a judgment. As to him, it was not a judgment, for the purposes of this action, unless the county court had jurisdiction to render it.

Was a summons, or the proof of one, essential to show jurisdiction? ''Civil actions in the courts of this state shall be commenced by the service of a summons.'' Comp. Laws, § 4892. Respondent claims that the voluntary appearance of Kilroy conferred jurisdiction, and took the place, not only of the service, but of the summons itself, and cites Section 4904, Comp. Laws: ''A voluntary appearance of a defendant is equivalent to personal service of the summons upon him.'' It is noticeable, and perhaps significant, that the appearance is to be equivalent to the service, not of a summons, but of the summons. It will be observed that the first several sections of the chapter from which the quotation as to the effect of a voluntary appearance is taken very definitely prescribe the form and contents of the summons. These directions are held to be so far mandatory as to require substantial pursuance. The subsequent sections regulate the manner in which the summons is to be served concluding with Section 4904, of which the above quotation is the closing paragraph. The entire section is as follows: ''From the time of the service of the summons in a civil action, or the allowance of a provisional remedy, the court is deemed to have acquired jurisdiction, and to have control of all the subsequent proceedings. A voluntary appearance of a defendant is equivalent to personal service of the summons upon him.'' The effect of the appearance is directly connected, not with the

summons itself, but with its service. Reading all these sec-
tions together, we are satisfied that it was the intention of this
provision to make a voluntary appearance of the defendant do
away with the necessity for a summons itself, as a part of the
judgment roll. It is not difficult to find cases where the lan-
guage of the courts, in speaking of the effect of voluntary ap-
pearance, is broad enough to cover cases where there was no
process at all; but, so far as we have observed, it has been used
in respect to defective process or irregular service, and where
the appearing defendant himself has sought to take advantage
of the defect or irregularity. Under our law a summons is the
only process by which a civil action in a court of record can be
commenced. Section 5540, Comp. Laws, provides that in cer-
tain cases parties may voluntarily submit a controversy to the
decision of the court, but such a proceeding is, by the terms of
the section, not an action; and it is not claimed that the judg-
ment attempted to be proved in this case was rendered under
such provision. It is expressly provided that an action may be
commenced in justice's court by the voluntary appearance and
pleading of the parties, (Section 6050, Comp. Laws,) but we
know of no express authority for the commencement of an ac-
tion in a court of record in any such manner. A summons
would seem to be a jurisdictional paper, as a notice of appeal
is jurisdictional. An action is commenced by "the service of a
summons." An appeal is taken by "serving a notice in writ-
ing." The summons, in the one case, and the notice of appeal,
in the other, conforming substantially to the requirements of
the statute, are the means by which the case and the parties
are brought into the court whose adjudication is sought. The
service or notice having been issued and ready for service, the
parties to be served may, by stipulation or by conduct, put
themselves in such position as to be estopped from saying that
the service was not actually made; but in case of appeal, cer-
tainly, neither a stipulation nor a voluntary appearance will
take the place of, or abolish the necessity for, a notice of ap-

peal.   A respondent may estop himself from denying that a notice of appeal appearing in the record was served upon him, but a notice actually issued is still necessary to give the court jurisdiction of the appeal.  Gold Street v. Newton, 2 Dak. 39, 3 N. W. 311.   We think there is reason for holding the rule the same with reference to a summons.  Section 5103, Comp. Laws, makes the summons a constituent part of the judgment roll in every case.   While we are not as clear upon the point as we would like to be, and do not decide the case upon it, we incline at present to the opinion that a judgment roll which shows no summons, with an admission that the roll offered constitutes the entire files of the case, is insufficient to prove a judgment in the county court, as against a stranger to it.

But, passing the question of the sufficiency of the evidence to prove the judgment upon which the execution was issued, we think the court erred in directing a verdict for the plaintiff. The mortgage from Kilroy to Gould was upon a stock of groceries.   The description of the stock in general terms, nothing being listed or scheduled, is immediately followed by the words ''It being the intention that the addition of stock will cover the amount sold, and keep the value of the stock up to its present value.''   As between the parties this provision could have meant but one thing.   It clearly indicates the understanding between them that the stock should be kept up by purchases to its then value, and that the mortgage should cover the stock so replenished.   The presence of these words could not be explained upon any other theory.   If this were a question between the mortgagee and a creditor who had attached or levied upon the accretions while in the hands of a mortgagor, there would be room for debate as to whether the language was sufficient, as between such contending parties, to extend the mortgage to such after-acquired stock; but the provision, whether operative or inoperative, would not make the mortgage fraudulent.   McKay v. Shotwell, 6 Dak. 124, 50 N. W. 622; Roundy v. Converse, 71 Wis. 524, 37 N. W. 811; People v.

Bristol, 35 Mich. 28; Allen v. Goodnow, 71 Me. 425. Where, under such a mortgage, possession is taken by the mortgagee, his right to the after-acquired property is paramount to that of a creditor who attaches subsequently. People v. Bristol *supra*; Bennett v. Bailey, 150 Mass. 257, 22 N. E. 916; Cameron v. Martin, 26 Kan. 612. In this case, Gould, the mortgagee, had taken possession of the mortgaged goods before the execution was put into the hands of the sheriff; so that nothing would have defeated his rights to them but the evidence of facts which would make the mortgage fraudulent in fact.

The mortgage, then, not being presumptively void, the mortgagee having previously taken possession of the entire stock and it not being shown that the sheriff had knowledge of any facts which would tend to make the mortgage fraudulent in fact, it was incumbent on him to assume that it was, and, without any direction from the execution creditor, to levy upon the mortgaged property without tender of the amount due on the mortgage? It may be conceded that the facts developed on the trial showed that the mortgage was fraudulent in fact, but was it the sheriff's duty to know that such facts could be proved? There is nothing in the case to indicate that the execution plaintiff ever requested him to levy upon this property, or that it questioned the good faith of the mortgage; but the liability of the sheriff is made to rest upon the fact that it afterwards succeeded in developing and proving facts aliunde the mortgage itself that made it fraudulent as against creditors. The sheriff was undoubtedly bound to use proper diligence in searching for property of the defendant subject to execution, and it may be that the facts proved in this case would have justified the jury in finding against him, but we do not think it was so as matter of law. The rule is that mortgages valid upon their face are good in fact; and with nothing to show that this mortgage was an exception, we do not think the sheriff, of his own motion, was required to treat it as such. To hold otherwise would make the office of sheriff an exceedingly perilous

one. Suppose Kilroy made a general assignment, valid upon its face, to Gould, and after the assignee had taken possession these executions had been placed in the sheriff's hands, with no direction to levy upon the assigned estate, and afterwards, at the suit of some creditor, and on account of extrinsic fraud, the assignment had been declared fraudulent, and the estate absorbed by such attacking creditors. Would the sheriff be liable to the execution plaintiff because he did not, of his own motion, levy on the assigned property and attack the assignment? We think not. In this case the duty of the sheriff might have been different if he had been directed to levy on this mortgaged stock. He would then, doubtless, have required indemnity from the execution plaintiff; but, as already remarked, there is nothing to show that the plaintiff questioned the validity of the mortgage, or that the sheriff was desired to levy on the property which had been taken under it by the mortgagee, Gould. Under these circumstances we think it was error to hold, as a matter of law, that he was so neglectful of his duty as to make him liable for the amount of the uncollected judgment. The judgment of the circuit court is reversed and the case remanded for a new trial.