Lawrence HANDY, Plaintiff–Appellant,

v.

William PRICE, Superintendent of AVCF; Bill Burdges, Major at AVCF; Randy McKown, P.A.; Gloria Masterson, Administrator III at AVCF; Joseph Shroyer, M.D. at CSH; Captain Conte, Kitchen Supervisor; Mary Berg, M.D. at AVCF, Ron Johnson, P.A. at AVCF; and John Does, c/o AVCF, Defendants–Appellees.

No. 92–1350.

United States Court of Appeals, Tenth Circuit.

June 25, 1993.

---

SUBMITTED ON THE BRIEFS: *

Lawrence Handy, pro se.

Barbara H. Glogiewicz of Cooper & Kelley, Gale Norton, Atty. Gen., and Simon P. Lipstein, Asst. Atty. Gen., Denver, CO, for appellees.

Before SEYMOUR, ANDERSON, and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Lawrence Handy brought this 42 U.S.C. § 1983 action against six employees of the Colorado Department of Corrections and two physicians, primarily alleging Eighth Amendment violations relating to treatment for his knee in late 1987 and early 1988, and lack of treatment for hepatitis C in 1991. On a fully developed record, the district court adopted the recommendations of the Magistrate Judge, granted summary judgment to the defendants, and dismissed the action. On appeal, Handy reasserts his Eighth Amendment claims, and makes brief but undeveloped reference to others. We affirm.

## BACKGROUND

Handy's complaint centers on the following facts. In November 1987, Handy, an inmate at the Arkansas Valley Correctional Facility (AVCF), had arthroscopic surgery on his knee. After a brief convalescence he was returned, in December 1987, to the AVCF where he was assigned (or volunteered) to work in the kitchen, the area of his previous work assignment. Over the next few days a secondary infection developed in Handy's knee and, about a week after his return to the AVCF from surgery, Handy was taken back to the hospital where further arthroscopic surgery was performed and antibiotics were administered. There is no allegation that this follow-up treatment was not effective in clearing up the infection. In January 1988, Handy was again returned to the AVCF where he was granted a medical "lay-in" (no work) for four or five months (the complaint is not specific), then returned to work in the kitchen. Handy's knee, which was injured prior to his entering prison, lacks a patella and is arthritic. It has been a source of pain and discomfort to Handy for many years, and continued to be so after the operations in question.

In October 1991, more than three years after the events just described, Handy tested positive for hepatitis C. By affidavit, Dr. Mary Berg states that no known treatment is available for hepatitis C. Prior blood tests were negative for other strains of hepatitis, but no test existed for hepatitis C at the time.

From the foregoing facts, Handy argues alternatively that in violation of the Eighth Amendment, the defendants were deliberately indifferent to his serious medical needs and he was subjected to cruel and unusual punishment: when he was not allowed to "lay-in" and was pressured to work, causing a secondary infection, during the week following his return from initial knee surgery; because he was forced to work at a job in the kitchen which was beyond his physical capacities, and denied a transfer to more appropriate work, all of which aggravated his knee condition; because he was allowed to contract the hepatitis "from somewhere within the confines of the Arkansas Correc-

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the deter- mination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

tional Facility," R. Vol. I, Tab 3 (Attachment); and because "the defendants have been deliberately indifferent to [his] request for medical attention regarding the hepatitis . . . ." *Id.*

Handy's complaint also alleges a denial of due process and equal protection with respect to his request for a medical lay-in, the handling of various grievances, job assignment, and pay. However, he does not press these arguments in any significant way on appeal.

Handy sued all the defendants in their official capacities, and as individuals, alleging personal participation in various ways, some of which are insufficient to support a cause of action against particular defendants. However, it is unnecessary to pursue the point because of our decision on the merits. The complaint seeks declaratory relief, an injunction, and damages, including punitive damages.

The action proceeded to the summary judgment stage, first on motion by Dr. Mary Berg, and, later, on joint motions by the remaining defendants. Handy's medical records were submitted under affidavit by the defendants, and are not disputed. Affidavits by physicians were also submitted, partly contested by Handy. On January 15, 1992, the magistrate judge recommended that Dr. Berg's motion for summary judgment be granted. On February 5, 1992, the district court adopted that recommendation and dismissed the complaint as to Dr. Berg. Thereafter, the magistrate judge held an evidentiary hearing to supplement the record in connection with the remaining defendants' joint motion for summary judgment. On July 21, 1992, the magistrate judge recommended that Handy's pending motions be denied and the action dismissed against the remaining defendants. That recommendation was adopted by the district court on August 11, 1992, and a judgment dismissing the action was entered on August 14, 1992. Handy filed his notice of appeal on November 10, 1992, pursuant to an order by the district court permitting the untimely filing.

## DISCUSSION

We review *de novo* the district court's grant of summary judgment, applying the same standard as the trial court employed under Fed.R.Civ.P. 56(c). *Clemmons v. Bohannon,* 956 F.2d 1523, 1525 (10th Cir.1992); *Smith v. Maschner,* 899 F.2d 940, 942 (10th Cir.1990). Summary judgment is appropriately rendered if the evidence demonstrates that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). "Affidavits and evidence offered by a nonmovant must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be 'merely colorable' or anything short of 'significantly probative,'" *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)), "because when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)); *see also Anderson,* 477 U.S. at 248–52, 106 S.Ct. at 2510–12.

As we recently stated in *Miller v. Glanz,* 948 F.2d 1562 (10th Cir.1991):

The Eighth Amendment, applied to the states through the Due Process Clause of the Fourteenth Amendment, prohibits infliction of cruel and unusual punishments on those convicted of crimes. In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court recognized that this prohibition applies to the inadequate provision of medical care to prison inmates. However, the Court held that because only the "'unnecessary and wanton infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must allege "deliberate indifference" to "serious" medical needs. *Id.* at 104, 106, 97 S.Ct. at 291, 292 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). In *Wilson v. Seiter,* —— U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the

Court clarified that the Eighth Amendment's deliberate indifference standard under *Estelle* has two components: an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. *Id.* — U.S. at —, 111 S.Ct. at 2324. With regard to the subjective component, "allegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent ... diagnos[is]' simply fail to establish the requisite culpable state of mind." *Id.* — U.S. at —, 111 S.Ct. at 2323; *see also El'Amin v. Pearce,* 750 F.2d 829, 832–33 (10th Cir.1984).

*Id.* at 1569.

■ *Wilson* makes clear that this two prong test applies to all Eighth Amendment claims raised in this case. Thus, Handy's allegations of cruel and unusual punishment in work assignments and not being allowed to "lay-in" the week after his first return from the hospital, must also show a genuine issue as to the defendants' culpable state of mind, and an unnecessary and wanton infliction of pain. *Wilson v. Seiter,* — U.S. —, —, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991).

■ Applying these standards, we conclude from undisputed facts of record in this case that there is no genuine issue as to any material fact with respect to Handy's Eighth Amendment claims.[1]

The record does not even approach establishing a denial of adequate medical care, much less an issue relating to a culpable state of mind, i.e., a deliberate indifference with respect to Handy's medical conditions. It shows precisely the opposite. Handy's medical records show that he is a prodigious user of the medical facilities and services both at the AVCF and otherwise available through the Department of Corrections. For instance, Mr. Handy does not dispute that portion of Dr. Berg's affidavit, R. Vol. I, Tab

29 (Affidavit of Mary Berg, M.D.), par. 2, which states:

Mr. Handy, at various times, has been taking pain medication, sleeping medication, anti-inflammatory medication, and anti-hypertensive medication. For his knee difficulties, Mr. Handy has been prescribed braces, physical therapy evaluations, a TENS unit, and received evaluations and reevaluations from other health care professionals for second and third opinions regarding his medical condition and to help him with his chronic pain problem. He has also been seen and treated in the Health Services Facility for other problems including management of his allergic rhinitis.

A page-by-page review of Handy's medical records indicates a degree of medical treatment which would be envied by the majority of the adult population of this country which is not incarcerated.

With respect to Handy's one week return to work during which a secondary infection developed, Handy does not dispute that he was promptly taken back to the hospital for treatment for that infection or that the treatment was effective. The rest of Handy's assertions are merely conclusory, e.g., that standing or working cause secondary infections; or that going back to work soon after an arthroscopic procedure constitutes constitutionally inadequate medical treatment for a knee. The same is true with respect to his hepatitis C. As to that, he does nothing more than assert he should have been treated, when Dr. Berg clearly explains the nature of the disease and the lack of an effective treatment. R. Vol. I, Tab 29. In his brief on appeal Handy finally reduces his medical claims to a charge of negligence as to his knee, Appellant's Brief at 21, and a quarrel with the doctor as to treatment for his hepatitis. Such claims raise no constitutional issue. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 105–106, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976); *Ramos v. Lamm,* 639 F.2d 559,

---

1. In his report and recommendation, the magistrate judge referred both to the credibility of a witness and the preponderance of the evidence on a certain matter, R. Vol. I, Tab 75 at 3. Such considerations are, of course, inappropriate in ruling on a motion for summary judgment. However, there is no indication that the magistrate judge or the district court relied upon either credibility or preponderance determinations in reaching a conclusion; and, neither do we.

575 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

■ Similar inadequacies are apparent with respect to Handy's cruel punishment claims. In his complaint, affidavits, objections, and briefs, including the brief on appeal, Handy complains repeatedly about the job he was assigned to perform in December, 1987, and after April, 1988. But he does not name or describe the job, does not detail the activities performed throughout a shift, does not compare it to jobs he wished to do and for which he sought a transfer, and does not show why or how the job was cruel, beyond his physical capacities, caused more than discomfort to his knee, or how it caused any deterioration of his knee that would not have otherwise occurred.

Additionally, Handy does not explain what happened regarding his knee/job relationship from May, 1988, to October, 1991, when he filed his suit. One of his claims is that in 1991, after his hepatitis C diagnosis, he was unconstitutionally *removed* from his job in the kitchen (apparently as a baker). So, first he says it was unconstitutional to make him work in the kitchen, then he says it was unconstitutional not to allow him to work in the kitchen, with the only discernible difference (other than the one week following surgery) being the type of assignment within the kitchen. And, as just indicated, no details are offered to inform us where within the kitchen duties the constitution draws a line. Only conclusions are submitted. Conclusory allegations are insufficient in pleadings, *Hall,* 935 F.2d at 1110, and they do not fulfill a nonmoving party's obligation when faced with affidavits and a motion for summary judgment. *See Ledoux v. Davies,* 961 F.2d 1536, 1537 (10th Cir.1992); *Nichols v. Hurley,* 921 F.2d 1101, 1113 (10th Cir.1990).

Handy does not pursue his due process or equal protection claims in any intelligible fashion on appeal. Upon a review of the record, we are satisfied that there is no substance to the claims, and that no genuine issue of material fact has been raised as to those matters.

■ Finally, Handy claims that he was not permitted proper discovery essentially to allow him to find out whether or not he had a claim. "The trial court has broad discretion regarding its control of discovery, and we will find that discretion to have been abused only when a denial of discovery precludes fair trial." *Green v. Johnson,* 977 F.2d 1383, 1391 (10th Cir.1992); *see also Sil–Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1514 (10th Cir. 1990). With respect to the denial of the injunctive relief sought by Handy, the district court was, of course, correct in ruling that the dismissal of Handy's action on the merits moots that issue.

This record has been carefully developed below. At great expense on behalf of the defendants, Handy was given every opportunity to present and elaborate upon his grievances. The briefing, motions, affidavits, and exhibits were all thoughtful and directed with particularity to Handy's allegations. The magistrate judge exercised additional care by conducting an evidentiary hearing to more fully inform the record with respect to facts which were not in dispute, and Mr. Handy was given an opportunity to testify and further develop any evidence available to support his claims at that time.

■ In the face of a record showing the abundant medical treatment which Mr. Handy has received while in the custody of the Colorado Department of Corrections, it is an understatement to say that actions like this are a significant and unwarranted burden on the defendants, on the state, and on the courts. But for the state's waiver, Handy's four year old allegations about his knee would likely have been barred by the statute of limitations, R. Vol. I, Tab 75 at 6, n. 3, and in any event they are constitutionally lacking in every respect. It is significant that for almost four years Handy has not made the allegations he now dredges up to combine with his dissatisfaction regarding his hepatitis/job removal situation. His quarrel with the doctor over treatment for hepatitis C states no claim on its face. His related complaints about his job assignments wrongly perceive the Constitution as a micromanager of day-to-day prison activities, and a guarantee of prisoner preferences over those of prison officials. Cases like this, with all of the attendant inconvenience, expense and

frustration, create a climate where it is a wonder that the states can persuade physicians to serve the prison system at all.

Upon a careful review of the record we conclude that the district court did not err in its denial of Handy's various motions, or in its dismissal of the action. The judgment of the district court is AFFIRMED.